UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WHETSTONE INDUSTRIES INC., a
Florida Corporation, and HENRY M.
WHETSTONE, JR., a Florida individual,

    Plaintiffs,

v.                                        Case No. 3:17-cv-1286-J-20PDB

YOWIE GROUP LTD., an Australian
Corporation, WAYNE LOXTON, an
Australian individual, PATRICIA FIELDS,
an Australian individual, and TREVOR
ALLEN, an Australian individual,

    Defendants.
_____/

## ORDER

This cause is before this Court on "Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" (Dkt. 35), Plaintiffs' response in opposition (Dkt. 40) and Defendant's Reply (Dkt. 46).

I. Background[1]

In April 2012, Yowie North America, Inc. ("YNA"), a subsidiary of Defendant Yowie Group Ltd. ("Yowie"), entered into an exclusive requirements contract with Whetstone Chocolate Factory, Inc. ("WCF"), the predecessor in interest of Plaintiff Whetstone Industries, Inc. ("WI") for manufacturing all its Yowie-themed chocolate and toy combination products in North America ("Manufacturing Agreement"), and also contracted with Hank Whetstone for certain patents and

---

[1] These are not necessarily the facts. For the purposes of a motion to dismiss, courts take a plaintiff's well-pleaded factual allegations as true, without making credibility assessments or engaging in fact-finding. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

other proprietary technology in manufacturing chocolate and toy combination products ("License Agreement").

In January 2014, the terms of the Manufacturing and License Agreements were amended. The price per unit paid to WCF was reduced, and the term of the contract was extended to December 21, 2025. And the License Agreement was amended to provide the exclusive and non-exclusive license fees to be paid to Whetstone were reduced. The term of the License Agreement remained through December 31, 2027.

Specifically, under the amended License Agreement, from January 1, 2016 through December 31, 2019, Whetstone was to be paid at least $500,000 per year for YNA's non-exclusive license to utilize Whetstone's patents and other technology for the production of chocolate and toy combination products. From January 1, 2020 through December 31, 2027, he was to be paid $0.02 per unit subject to annual CPI increases. Under the amended Manufacturing Agreement, WI was to be paid a price per unit manufactured under a sliding scale, depending upon the number of units manufactured.

Prior to October 2015, the Defendants (the individual Defendants all being officers or directors of the parent Yowie Group) determined to cause Yowie's subsidiary, YNA, to repudiate the Manufacturing Agreement and License Agreement. Yowie and the individual Defendants (in their capacity as Yowie board members) caused YNA to cease placing its chocolate and toy combination product orders with WI, and to cease making license payments to Hank Whetstone.

Instead, the Defendants directed another Yowie subsidiary, Yowie Natural World, Inc., to contract for the production of chocolate and toy combination products with a New York manufacturer, Madelaine Chocolate Novelties, Inc.

On November 16, 2017, Plaintiffs filed a four-count Complaint against Yowie and the

individual Defendants, alleging tortious interference with the Manufacturing Agreement between WI and YNA (Count I), tortious interference with the business relationship between WI and YNA (Count II), tortious interference with the License Agreement (Count III), and tortious interference with the business relationship between YNA and Whetstone (Count IV).

II. Standard of Review

In deciding on a Rule 12(b)(6) motion, a district court must construe the complaint broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). However, as the Supreme Court explained, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 12(b)(6) allows "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007).

The Supreme Court teaches in *Twombly* that a complaint must contain "enough factual matter (taken as true) to suggest" the required element. *Twombly*, 550 U.S. at 556. The rule "does not impose a probability requirement at the pleading stage," but "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the element. *Id.* It is adequate if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." *Id.*

III. Discussion

Defendants assert several reasons why this action should be dismissed with prejudice. This Court will address these reasons.

Defendants initially insist the entire Complaint should be dismissed as to the individual Defendants because a tortious interference claim exists only against individuals who are not parties to the contractual relationship. In other words, a claim for tortious interference cannot lie against the individual Defendants since they must be considered as parties to the contractual relationship.

In Florida a tortious interference with a business relationship claim must allege these elements: "'(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla.1985)). Importantly, "[o]ne cannot tortiously interfere with a contract to which it is a party. Consequently, an agent generally cannot be held liable for tortiously interfering with the contract of its principle because the agent is privileged to act in the best interest of the principle." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367–68 (M.D. Fla. 2007) (internal citations omitted). There is an exception to the general rule when an agent "acts outside the scope of agency or is not acting in the principle's best interests." *Id.*

The Complaint alleges the individual Defendants acted outside the scope of any agency relationship and/or were not acting in YNA's best interests when they induced YNA to sever their contractual and business relationships with WI and Whetstone. Specifically, the Complaint alleges that Loxton, Fields and Allen acted "without justification" and "out of malice" when they caused YNA to repudiate the agreements. (Dkt. 1, ¶¶ 33, 35, 42, 43, & 51-59). At this stage of the proceedings the Complaint's allegations control. It is alleged the individual Defendants stepped outside their corporate capacity when they interfered with Plaintiffs' rights. Plaintiffs have stated

sufficient allegations for a tortious interference claim against the individual Defendants.

Defendants next maintain Plaintiffs failed to allege facts to state a claim against Yowie for tortious interference. According to Defendants, Plaintiffs' tortious interference claims against Yowie fails because Plaintiffs have not alleged plausible facts that Yowie was a "stranger" to YNA's contracts with Plaintiffs.

The Complaint maintains the individual Defendants acted outside the scope of any agency relationship and/or were not acting in YNA's best interests when they induced YNA to sever their contractual and business relationships with WI and Whetstone. The Complaint alleges the individual Defendants and Yowie "acted out of malice, and used dishonest, unfair or improper means" when it interfered with WI's and Whetstone's contractual and business relationships with YNA. (Dkt. 1, ¶¶ 35, 44, 53 & 59). The individual Defendants stepped outside their corporate capacity when they interfered with Plaintiffs' rights.

This Court notes there is precedent for the proposition that a parent company can be held liable for tortuously interfering with its subsidiary's contracts and business relationships with third parties. *See Hyatt Corp. v. Epoch-Fla. Capital Hotel Partners, Ltd.,* No. 6:0-7-CV-1260-ORL-KRS, 2008 WL 490121, *4 (M.D. Fla. Feb. 20, 2008) (explaining the Florida Supreme Court held, in slightly different circumstances, "that a parent corporation may be liable for tortious interference with its subsidiaries' or affiliates' business relationships"). Plaintiffs' allegations are sufficient, at the motion to dismiss stage, to state a claim for tortious interference against Yowie.

Defendants next maintain Plaintiffs cannot assert a claim for tortious interference with a business expectancy. According to Defendants, even if this Court finds they could have committed tortious interference with YNA's contracts with Plaintiffs, Plaintiffs tortious interference with a business expectancy claims (Counts II and IV) are subsumed by their tortious interference with a

contract claims (Counts I and III).

Florida law recognizes a cause of action for tortious interference with business relations is "a separate and distinct tort" from tortious interference with contractual relations. *See Ziino v. Baker*, No. 5:07-CV-217-OC-10GRJ, 2007 WL 2433902, at *3 (explaining "in Florida the torts of tortious interference with contract and tortious interference with a business relationship are two separate-although very similar causes of action; only the latter requiring the existence of a 'business' relationship."); *St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*, 784 So. 2d 500, n. 4 (Fla. Dist. Ct. App. 2001) (explaining the difference between the two torts is that with one a contract is involved while the other it is concerns a business relationship.). Hence this Court need not dismiss Counts II and IV for this reason.

Next, Defendants maintain they did not tortuously interfere with the Manufacturing and Patent Agreements because Yowie did not breach those agreements. Both agreements demonstrate they have not been breached, according to Defendants, all of Plaintiffs' causes of action fail to state a claim.

The License Agreement grants YNA a license to use Whetstone's patents through their expiration date, and a license to use Whetstone's technology through 2027, to manufacture chocolate and toy combination products in North America. (Dkts. 28-1, 28-5). Under the Agreement, as amended, YNA must pay Whetstone two types of fees: (1) a royalty tied to the number of units sold, equal to ". . . a fixed amount of $0.040 per unit, subject to annual CPI increases using actual year over year increases beginning January 1, 2015 (Dkt. 28-5, ¶ 1); and (2) a "Minimum Fee" (through and including 2019) simply for the right to "maintain" either exclusive rights or non-exclusive rights to utilize the Patents. (Dkts. 28-5, ¶¶ 2-3; 28-4, ¶¶ 4-5). Regardless of the number of units sold, YNA is required to pay a minimum annual fee to Whetstone through

2019. YNA contracted for the right to use Whetstone's patents and technology, plus a variable fee thereafter based upon the number of units sold in North America through 2027, regardless of whether Yowie used the Patents and Technology. (Dkts. 28-1, ¶¶1-3; 28-5, ¶ 1). YNA also agreed to pay Whetstone a minimum annual fee to "maintain" its right in the Patents even if it did not actually utilize them. This obligation is shown by Sections 2 and 3 of the "Agreed Changes" to the License Agreement. (Dkt. 28-5).

Turning to the Manufacturing Agreement. This agreement contains an "Exclusivity" provision in Section 17 that provides:

> All Yowie Product and other chocolate and toy combination products ("New Products") produced pursuant to a separate licensing agreement between Henry M. Whetstone, Jr. and Yowie is subject to this Agreement. This is an exclusive manufacturing agreement to produce all product produced pursuant to the Patents.
> . . .

(Dkt. 28-1, at pp. 4-5). This provision recognizes WI as the "exclusive manufacturer" of all products covered under the Licensing Agreement. Section 28 of the Manufacturing Agreement, further recognizes WI as "the sole manufacturer of the Yowie Products and similar products that may be developed by Yowie, which are subject to the patents." (Dkt. 28-1, at p. 7). These provisions suggest Defendants' argument that the exclusivity language in the Manufacturing Agreement applies only when YNA is "using" Whetstone's patents to manufacture chocolate and toy combination products is misplaced.

In any event, the Complaint alleges that YNA had continuing obligations based on both the Manufacturing and License Agreements, yet the individual Defendants "acted out of malice, and used dishonest, unfair or improper means to interfere" with these agreements. (Dkt. 1, ¶¶ 35, 53). These actions culminated in the repudiation of both the Manufacturing (*id.* at ¶ 36) and the License Agreements (*id.* at ¶ 54) which resulted in monetary damages Plaintiffs and the cessation

of license payments to Whetstone (*id.* at ¶¶ 36-38, 52).

Were this Court to determine Defendants' actions were not violations of the Agreements, it would be interpreting the Agreements, which this Court will not do at this stage. Through the allegations of the Complaint, Plaintiffs has sufficiently plead claims for tortious interference.

Finally, Defendants claim that Plaintiffs are taking an impermissible "second bite at the apple." Plaintiffs' claims against Defendants should fail because they have alleged no breach of a duty by Defendants independent of YNA's contractual obligations under the agreements. In other words, the economic loss rule bars Plaintiffs' recovery. Alternatively, the Complaint should be dismissed as impermissible claim splitting.

Defendants maintain Plaintiffs' claims for tortious interference are barred by the economic loss rule. However, Florida courts recognize that tortious interference is a separate and independent tort that requires proof of facts separate from a breach of contract claims. As such, a tortious interference claim is a permissible exception to the economic loss rule. *See Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp.*, 354 F. Supp. 2d 1338, 1346 (S.D. Fla. 2005) (stating that a claim for tortious interference was not barred by the economic loss rule); *Rockledge Mall Assocs., Ltd. v. Custom Fences of Brevard, Inc.*, 779 So. 2d 558, 559 (Fla. Dist. Ct. App. 2001) (explaining a contract claim and a tortious interference claim are "separate and distinct causes of action rather than alternative theories of recovery for the same wrong.")

Alternatively, Defendants assert this action should be dismissed because Plaintiffs are engaged in "impermissible claim splitting." The Florida Supreme Court explained claim splitting this way,

> We recognize the rule against the splitting of causes of action and that as a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one

8

> action or not at all. As is stated in 1 Am. Jur. 481, the rule is founded upon the plainest and most substantial justice-namely, that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of suits.

*Gaynon v. Statum*, 151 Fla. 793, 796, 10 So. 2d 432, 433 (1942) (internal quotations omitted). "Federal courts recognize Florida's rule against splitting causes of action which flows from the doctrine of res judicata and makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action . . . ." *Pollitz v. Halifax Health*, No. 6:15-CV-450-ORL-37, 2015 WL 4987732, at *2 (M.D. Fla. Aug. 19, 2015) (internal citation and quotations omitted). The constraint against claim splitting applies where "the defendants in the cases [are] the same or at least in privity with each other." *Id.* (internal quotations omitted).

Defendants explain that two Florida state court actions are pending by Plaintiffs against YNA alleging that YNA breached its respective agreements with Plaintiffs. In addition, this action was filed YNA's parent company, Yowie, and the individual Defendants for tortious interference with YNA's contracts with Plaintiffs.

In response Plaintiffs explain the only defendant named in the state court action is YNA, which is not a party to this lawsuit. The defendants in this action Yowie, Loxton, Fields and Allen, none of whom are parties in the state court action. Further, the state court action only involves one of the two contracts at issue in this action—the License Agreement but not the Manufacturing Agreement.

The parties are not identical in these two actions. Therefore, the critical question is whether the parties are in privity with one another. In the state court action, the only defendant named is YNA—not a party to this lawsuit. The defendants in this action are Yowie and the individual Defendants—not parties in the state court action. *See Greenstein v. Greenbrook, Ltd.*, 443 So.2d 296, 297 (Fla. 3d DCA 1983) (determining there was no improper splitting of the causes of action

to defendants not joined in the first case). This Court, therefore, determines at this stage in the proceeding it need not dismiss this case for improper claim splitting.

Accordingly, it is **ORDERED**:

"Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted" (Dkt. 35) is **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, this 14 day of August, 2019.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Allen M. Levine, Esq.
Steven Eric Brust, Esq.
Kevin Markow, Esq.
Bryant T. Lamer, Esq.
Joshua C. Dickinson, Esq.